IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

CARLYLE S. ISLEY,

                      Plaintiff,

v.                                           Action No. 3:07–CV–174

SOUTHERN GRAPHIC SYSTEMS, INC.,

                      Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Summary Judgment by Southern Graphic Systems, Inc. ("SGS"). For the reasons stated below, the Motion shall be GRANTED.

1.

SGS manufactures engraved cylinders that are used for printing. Carlyle Isley was employed by SGS as an inventory controller. His duties included handling cylinders that weighed as much as three thousand pounds. In June 2003, Isley injured his left shoulder while he was moving a cylinder. He continued to work for several months, performing "light duties" with his healthy arm, according to Isley, see Pl.'s Mem. Opp. Def.'s Mot. Summary J. at 5, or – as SGS alleges – the regular duties of his job with the assistance of other employees, see Mem. Supp. Def.'s Mot. Summary J. at 2. In October 2003 Isley requested and received leave to have surgery on his shoulder. For five months, until March 18, 2004, Isley received workers' compensation and disability benefits.

While Isley was recuperating from surgery, in November 2003, SGS appointed a new plant manager, Mike Fitzgerald, who restructured the company's operations. Fitzgerald increased production, eliminated a shift, and changed personnel in several of the company's departments. Those changes eliminated any "light duty" positions that existed at the company. See Fitzgerald Aff. at 1; Fitzgerald Dep. at 10; Erice Dep. at 21–23.

In March 2004, Isley's doctor authorized him to work, provided that he was given "light duty" status. On March 14, 2004, Isley attempted to return to work, but SGS informed him that no "light duty" work was available. Isley did not try to return to work for several months. Then, in a letter dated October 8, 2004, SGS directed Isley to provide information about his ability to work to the company's insurance provider or to obtain permission to return to work from the company's physician. The letter stated that if Isley did not comply with those directions by October 18, 2004, SGS would "have no option but to consider [Isley] as quit." Pl.'s Compl. at 3, 6. Isley did not follow the letter's instructions; but, later that month, he attempted to return to work for a second time. SGS told him that there was still not any "light duty" work available. Then, on about December 17, 2004, Isley returned his uniforms and keys to SGS and left the company's building. At about that time, he moved to North Carolina and did not attempt to return to SGS again. Isley was never cleared to perform "full duty." See Isley Dep. at 36.

Now, Isley, who is black, claims that SGS violated Title VII of the Civil Rights Act of 1964 by refusing to allow him to return to work and terminating his employment because of his disability, even though injured white employees were permitted to continue working.

Isley also claims that SGS discriminated against him by preventing him from returning to work on "light duty," thereby refusing to reasonably accommodate his disability in violation of the Americans with Disabilities Act.

SGS alleges that Isley could have returned to work if he had been cleared to perform all of the duties of his job. SGS also denies that it discriminated against Isley because he is black, alleging that five other African-American employees were given "light duty" status between May 2000 and April 2002. Isley does not provide any evidence that contradicts this allegation, but he disagrees with it and "demands proof thereof." Pl.'s Mem. Opp. Def.'s Mot. Summary J. at 3.

2.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if, given the evidence, a jury could reasonably return a verdict for the non-moving party; a fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Guinness PLC v. Ward, 955 F.2d 875, 883 (4th Cir. 1992) (stating that a dispute is "genuine" if the evidence "create[s] fair doubt"). In deciding whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party, but it may not weigh the evidence or evaluate its credibility. Anderson, 477 U.S. at 249, 255.

The party moving for summary judgment must identify the evidence that it believes demonstrates that no genuine issues of material fact exist. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries that burden, the non-moving party must establish "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The non-moving party may not do so by relying solely on its pleadings. Celotex, 477 U.S. at 324.

3.

Isley opposes SGS's Motion for Summary Judgment solely on the ground that there are genuine issues of material fact. But, he has established – at most – one "specific fact" that shows that a genuine issue of fact exists, and that issue is not material because, even if it were resolved in Isley's favor, none of his claims could succeed as a matter of law.

A.

First, Isley challenges SGS's allegations that he was not allowed to continue working because (1) he could not perform all of the duties of his job and (2) no "light duty" work was available. Ronald Erice, a supervisor at SGS, testified that Isley could have returned to his job if he was healthy. See Erice Dep. at 20 (stating that Isley's "job was available for him" and that he was "fully expected" to return to it when he was given "full duty" status). In addition, SGS has shown that no "light duty" work was available after November 2003. See Fitzgerald Aff. at 1–2 (adding that SGS has not given "light duty" status to any employees for "an extended period" since 1989); Fitzgerald Dep. at 10; Erice Dep. at

4

21–23 (stating that SGS has not offered any permanent "light duty" positions for twenty years). But, Isley has not offered any evidence that contradicts Erice's testimony or suggests that any "light duty" work was available after SGS restructured its operations. While Isley insists that a "light duty" position must have been available because he was given "light duty" status in the past, see Isley Dep. at 58; see also Erice Dep. at 26 (acknowledging that Isley "came back for light duty" after his surgery), Isley's belief about SGS's policy, unsupported by any evidence, does not create a genuine issue of fact.

Second, Isley challenges SGS's description of the work that he performed after he was injured. SGS alleges that "Isley continued to do his job" with the assistance of other employees, Def.'s Mot. Summary J. at 2; Isley alleges that he performed only "light dut[ies]" and that SGS "accommodated" his injury, Pl.'s Mem. Opp. Def.'s Mot. Summary J. at 5. Isley's position does not create a genuine dispute, however. The parties agree that Isley (1) continued to work at SGS, and (2) was not solely responsible for carrying out all of the tasks that he performed before he was injured. Whether Isley was given "light duty" status – or simply fewer responsibilities – is not material: a jury could find only that he continued to work, but that he did not perform as many tasks as he did before he was injured. Thus, this dispute is not genuine.

Third, Isley "demands proof" of SGS's allegation that other African-American employees were given "light duty" status before the company restructured its operations. Id. at 3. But, Isley does not offer any evidence that contradicts this allegation. Thus, a jury

5

could not reasonably find that only white employees were permitted to work on a "light duty" status.

Finally, Isley disputes the "content" of the letter that he received from SGS in October 2004. But, the parties have stipulated that the letter advised Isley that, unless he provided information to SGS's insurer or obtained permission to work from the company's physician, he "would be considered to have quit his employment." Stipulation of Uncontested Facts at 2. In addition, SGS's plant manager testified that he did not "take any action whatsoever at any time" to terminate Isley's employment. Fitzgerald Dep. at 16. The parties' stipulation and Fitzgerald's statement undermine Isley's argument that he was terminated; on the contrary, they suggest that Isley voluntarily left his job at SGS by failing to comply with the company's instructions. However, even if a jury could reasonably conclude that SGS terminated Isley, this issue would not affect the outcome of this suit because Isley's claims fail as a matter of law for other reasons.

B.

Isley claims that SGS discriminated against him by refusing to allow him to return to work because he is black, violating Title VII of the Civil Rights Act of 1964, and by preventing him from returning to work on "light duty" (i.e., refusing to reasonably accommodate his disability), violating the Americans with Disabilities Act.

Under Title VII, an employer may not fail or refuse to hire, or discharge, an individual, or discriminate against him with respect to the terms, conditions, or privileges of his employment, on the basis of his race or color. 42 U.S.C. § 2000e-2(a)(1). To prove a

claim of discrimination under Title VII, a party must provide direct or indirect evidence that he was the target of discrimination, or follow the burden-shifting procedure established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 303 (4th Cir. 1998). Since Isley does not provide any direct or indirect evidence that SGS discriminated against him on the basis of his race, his claim is governed by McDonnell Douglas.

Under that approach, Isley must first establish a prima facie case of discrimination. See Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3 (2003). If he does so, SGS must offer a legitimate, non-discriminatory reason for the way that it treated Isley. See id. The company's burden is one of production, not persuasion. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If SGS satisfies that burden, Isley must prove by a preponderance of the evidence that the company's explanation is pretextual. Raytheon, 540 U.S. at 50 n.3; Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007). Isley's burden at this stage "merges with [his] ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." Lettieri, 478 F.3d at 646–47.

To establish a prima facie case of discrimination on the basis of race under Title VII, Isley must show that (1) he is a member of a racial minority; (2) he was qualified for the job that he held; (3) he was discharged from that position; and (4) a similarly-situated person who does not belong to that racial minority was treated differently. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas, 411 U.S. at 802. Interpreting the third prong of that standard, the Fourth Circuit has ruled that a party must show that he

was performing the duties of his position in a way that met his employer's legitimate expectations at the time that he suffered an adverse employment action.  Lettieri, 478 F.3d at 647.

Isley has shown that he is a member of a racial minority, and he may have created a genuine issue about whether he was discharged from his position at SGS.  But, Isley has not shown that he was capable of performing all of the duties of his position in October 2004, when he alleges that SGS terminated his employment.  He acknowledges that he was never authorized to return to work on a "full duty" basis, and he has not shown that any "light duty" work was available at SGS after its operations were restructured in November 2003.  In addition, Isley has not shown that any similarly-situated people who are not black were treated differently by SGS.  He alleges that three white employees, John Fox, Billy Lack, and Forrest Jewell, were allowed to continue working after they were injured, and that Lack and Jewell were given "light duty" status.  But, Isley has not shown that those employees were affected by their injuries in the same way, or to the same degree, as Isley.  Nor has he shown that they were injured after SGS restructured its operations, eliminating any available "light duty" work.  Thus, Isley has not shown that Fox, Lack, or Jewell were similarly-situated.  See Brown v. McLeod Reg'l Med. Ctr. of Pee Dee, Inc., 166 F. App'x 672, 674 (4th Cir. 2006) (affirming that a black employee who was authorized to return to work with "significant restrictions" and a white employee who was authorized to return to work with "minor restrictions" were not situated similarly, upholding a ruling granting summary judgment for the black employee's employer).

Thus, Isley has not established a prima facie case of discrimination. Even if Isley's allegations constituted a prima facie case of discrimination, SGS's explanation that it restructured its operations, eliminating any "light duty" positions that previously existed, is a legitimate, non-discriminatory reason for its refusal to allow Isley to return to work, a reason that satisfies SGS's burden of production. And, Isley has not offered any evidence that shows that the company's explanation is pretextual. He argues that the company's explanation is a "convenient defense," Pl.'s Mem. Opp. Def.'s Mot. Summary J. at 4, but a jury could not reasonably return a verdict in his favor solely on the basis of Isley's insinuations. Since Isley has not shown by a preponderance of the evidence that SGS did not act for that reason, his claim under Title VII fails as a matter of law.

Next, an employer covered by the ADA may not discriminate against a "qualified individual with a disability" on the basis of his disability with respect to hiring or discharging the individual or to the terms, conditions, and privileges of his employment. See 42 U.S.C. § 12112(a). In this context, "discrimination" includes (1) "limiting, segregating, or classifying" the individual in a way that adversely affects his opportunities or status; (2) failing to reasonably accommodate the individual's known physical limitations, unless doing so would impose an undue hardship on the employer; and (3) denying the individual an employment opportunity on the basis of the employer's need to reasonably accommodate the individual's physical impairment. See id. § 12112(b)(1), (5). In addition, the employer may not "utiliz[e] standards, criteria, or methods of administration" that discriminate against the individual. Id. § 12112 (3)(A).

In the context of the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more ... major life activities." Id. § 12101(2); see Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 197 (2002) (stating that a "major life activity" is one of "central importance to daily life" that an average person can perform with little difficulty). In addition, an individual who has a record of, or is regarded as having, that type of impairment has a "disability." 42 U.S.C. § 12101(2).

A "qualified individual with a disability" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). The employer's "judgment as to what functions of a job are essential" merits consideration, id., and any task that "bear[s] more than a marginal relationship to the job at issue" is an "essential function." Rohan v. Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004). A "reasonable accommodation" includes "job restructuring," reassignment, acquiring or modifying equipment, and "other similar accommodations." 42 U.S.C. § 12111(9)(B). And, reasonably accommodating an impairment imposes an "undue hardship" if it requires significant difficulty or expense, given the cost of the accommodation and its impact on the employer's operation. See id. § 12111(10). Whether a party is a "qualified individual with a disability" is determined on the basis of the date of the employer's allegedly unlawful decision. EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

Since the parties agree that Isley's relationship with SGS changed by virtue of his injury, Isley's claim of discrimination under the ADA is governed by the standard established in Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 212 (4th Cir. 1994).[1] See Wells v. BAE Sys. Norfolk Ship Repair, 483 F. Supp. 2d 497, 507–08 (E.D. Va. 2007) (recommending this approach).  Under Tyndall, Isley must show that he is a "qualified individual with a disability," and that SGS discriminated against him.  31 F.3d at 212.

Isley has not satisfied that standard.  First, he has not shown that he is a "qualified individual with a disability."  A party must satisfy a "demanding" standard to qualify as "disabled."  Toyota, 534 U.S. at 197.  Isley alleges that his shoulder, neck, and back hurt, and that the pain is so bad on some days that he cannot "get up."  Isley Dep. at 49.  He states that he is able to drive, but that it is difficult for him to wash his hair or back, and that he cannot swing a golf club.  See id. at 53–54.  On the basis of these allegations, the Court

---

[1] Under McDonnell Douglas, Isley's ADA claim cannot succeed.  To establish a prima facie case of wrongful discharge under the ADA, a party must show that (1) he was a "qualified individual with a disability"; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time that he was discharged; and (4) the circumstances of his discharge imply that the employer unlawfully discriminated against him.  Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004).  The Court has found that a plaintiff who was not able to perform her job for fifteen months before she was discharged could not establish the third element of her prima facie claim.  Wells v. BAE Sys. Norfolk Ship Repair, 483 F. Supp. 2d 497, 508 (E.D. Va. 2007).  Isley cannot establish the third element of his claim for the same reason.  He attempted to return to work at SGS for the last time in October 2004, the same month that the company informed him that he "would be considered to have quit his employment" unless he provided information requested by SGS's insurer or visited the company's physician, Stipulation of Uncontested Facts at 2.  By that time, Isley had not performed any work for SGS for approximately one year, and the letter that Isley received demonstrates that he did not satisfy the company's expectations while he was recuperating, expectations whose legitimacy Isley does not challenge.

finds that Isley's injury does not affect any activities of "central importance," as the Supreme Court requires. See Toyota, 534 U.S. at 197; compare Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 255 (4th Cir. 2006) (holding that eliminating bodily waste is a "major life activity").

Even if Isley's allegations that he is disabled are sufficient to survive a motion for summary judgment, Isley has not shown that he was capable of performing all of the duties of the position that he held at SGS. His job required lifting cylinders weighing as much as three thousand pounds, and Isley acknowledges that he has not been authorized to perform that type of task. Nor does Isley explicitly allege that he could perform the duties of his job with reasonable accommodations. He alleges that he continued to work for several months after he was injured, using only his healthy arm. But, he does not claim that he was able to perform all of his duties by himself, and an employer is not required to allocate an essential function of a disabled employee's job to another employee in order to accommodate that disability. Wells, 483 F. Supp. 2d at 506 (applying 29 C.F.R. § 1630.2(o)); cf. Howell v. Michelin Tire Corp., 860 F. Supp. 1488, 1492–93 (M.D. Ala. 1994) (ruling that an employer does not have to create a "light duty" position to accommodate an employee's disability). While Isley suggests that he could have been given a different job within SGS, an employer is not required to force another employee to leave his or her position to accommodate a disabled employee. EEOC v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001). Nor must an employer "disrupt the operation of a defensible and non-discriminatory company policy in order to provide a reasonable accommodation." Id.

12

Accordingly, the fact that SGS's decision to reorganize its operations eliminated work that Isley could have performed does not imply that SGS failed to reasonably accommodate his condition. Thus, Isley has not shown that he is a "qualified individual with a disability."

Second, Isley has not shown that SGS discriminated against him by discharging him or refusing to allow him to return to work. Isley insinuates that he was the target of discrimination because Erice allegedly did not know until Isley attempted to return to work that Fitzgerald eliminated any "light duty" work that was available previously. Thus, Isley suggests, Fitzgerald implemented that change to thwart Isley's effort to continue working at SGS. But, Isley has not offered any evidence to support his contention that Erice was not aware of Fitzgerald's decision when he made it, in November 2003. Thus, the evidence, viewed in the light most favorable to Isley, shows that no "light duty" work was available for several months before Isley attempted to return to work. For that reason, Isley's argument that he was the target of discrimination fails.

For those reasons, Isley's claim of discrimination under the ADA fails as a matter of law.

5.

For the reasons stated above, SGS's Motion for Summary Judgment shall be GRANTED. It shall be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 17th day of January 2008